## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

RUSSELL GRAHAM,                          )
                                         )
                    Plaintiff,           )
vs.                                      )        NO. CIV-10-0977-HE
                                         )
CARGILL, INC., ET AL.,                   )
                                         )
                    Defendants.          )

## <u>ORDER</u>

Plaintiff Russell Graham brought this lawsuit against defendants Cargill, Inc. and Wesley Osborne alleging plaintiff's employment was terminated because of his race. Mr. Graham asserts claims under Title VII and Oklahoma's <u>Burk</u> tort against defendant Cargill, Inc., and a claim for tortious interference with an existing business relationship against defendant Osborne. Defendants have moved for summary judgment on all claims.

### I. Background

The undisputed facts reflect that Mr. Graham, an African American, was an at-will employee on the second shift at Cargill Meat Solutions Corporation's ("CMSC") Oklahoma City facility from mid-January 2010 until May 3, 2010. [Def. Fact 2]. CMSC is a subsidiary of defendant Cargill, Inc. [Def. Fact 1]. Defendant Wesley Osborne was the supervisor of CMSC's second shift and plaintiff's immediate supervisor. [Def. Fact 3]. Plaintiff's employment with CMSC was terminated on Monday, May 3, 2010 by the Oklahoma City facility operations manager, Jess Roach, following an altercation the preceding Saturday, May 1, 2010. [Def. Fact 32].

CMSC has over fifty facilities, including the Oklahoma City facility where Mr. Graham was employed. [Def. Fact 12]. Cargill, Inc.'s corporate headquarters are in Minnesota and CMSC's corporate headquarters are in Kansas. [Def. Fact 1]. CMSC maintains financial records and files tax returns separately from Cargill, Inc. [Def. Fact 12]. No manager at the Oklahoma City facility has been employed by Cargill, Inc. since the facility opened in 2005, and all employees at the Oklahoma City facility received their paychecks and benefits from CMSC. [Def. Fact 11]. Cargill, Inc. does provide the equal employment opportunity policies for CMSC, and the head of CMSC's human resource department reports to a Cargill, Inc. officer. [Doc. #67-1, Mott Deposition, pp. 67-72]. Additionally, Cargill, Inc.'s human resource department could assist CMSC's human resource department if requested, *id.* at 14-15, and CMSC employees have access to an ethics hotline where they can talk to someone at Cargill, Inc. about discrimination complaints. *Id.* at 26-28.

Plaintiff's claims in this lawsuit center on his contention that defendant Osborne convinced Mr. Roach to terminate the plaintiff because of Osborne's racial animus toward the plaintiff. Plaintiff alleges defendant Osborne treated white employees under his supervision more favorably than black employees and engaged in other racist conduct while acting as a supervisor for CMSC. A more detailed statement of facts as they pertain to the alleged racial discrimination is unnecessary to dispose of the present motion.

## II. Discussion

Summary judgment is appropriate only when the moving party demonstrates that no genuine dispute of material fact exists and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party who bears the burden of proof at trial on a claim or defense must be able to point to sufficient evidence to support each essential element of the claim or defense in order to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c)(1)(B). All inferences from the evidence are to be viewed in the light most favorable to the non-moving party. Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1169-70 (10th Cir. 2010). Applying this standard to the present case, the court concludes summary judgment in defendants' favor is appropriate.

### A. Claims Against Cargill, Inc.

#### 1. Title VII

To establish a prima facie case for his Title VII claim, plaintiff must show that the defendant against which the claim is asserted was his employer. Here, whether Cargill Inc. was plaintiff's "employer" depends on whether it is liable for the acts of CMSC. There is a strong presumption that a parent corporation is not liable for claims of employees of its subsidiary because of the liability limiting nature of separate corporate entities. Frank v. U.S. West, Inc., 3 F.3d 1357, 1362 (10th Cir. 1993). In the context of a Title VII claim, this presumption can only be overcome in extraordinary circumstances, such as where the parent

and subsidiary are essentially an integrated enterprise. *See id.*[1]  Plaintiff argues the operations of Cargill, Inc. and CMSC are so interrelated that the two corporations should be treated as a "single employer" or "integrated enterprise."  The court concludes, however, that Mr. Graham has failed to produce evidence that Cargill, Inc. exercised the necessary level of control over CMSC.

Four factors are considered when determining whether two separate entities constitute a "single employer" or "integrated enterprise": (1) interrelation of operations, (2) centralized control of labor operations, (3) common management, and (4) common ownership or financial control.  Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1322 (10th Cir. 2004); Frank, 3 F.3d at 1362.  The most important of these factors is whether there is a centralized control of labor operations among the two corporations.  Bristol v. Bd of County Comm'rs of County of Clear Creek, 312 F.3d 1213, 1220 (10th Cir. 2002).  The right to terminate employees is of paramount importance to this inquiry.  *See* Sandoval, 388 F.3d at 1323 (citing Bristol, 312 F.3d at 1219).

Viewing the facts and the inferences therefrom in the light most favorable to the plaintiff, Mr. Graham has failed to create a triable issue as to whether Cargill, Inc. and CMSC are a single employer for Title VII purposes.  Plaintiff has not produced evidence to dispute defendants' assertion that CMSC's Oklahoma City employees were employed by

---

[1] *The Tenth Circuit has identified four tests for determining whether a parent corporation can be held liable for the employees of its subsidiary in the Title VII context.*  Frank, *3 F.3d at 1362 & n.2.  Those tests are the single-employer test, agency theory, the alter ego test, and the instrumentality test.  Id.  Plaintiff relies only on the single-employer test.*

CMSC, received their paychecks from CMSC, were supervised by CMSC, and that all decisions as to plaintiff were made by CMSC personnel.  [Def. Fact 11].  He does not dispute defendants' assertion that none of the managers at the Oklahoma City facility had any position with Cargil, Inc.  [Def. Fact 13].

Further, the facts to which plaintiff does point are insufficient to show the necessary interrelationship.  A single manager reporting to an officer in the parent corporation does not establish an interrelationship of operations.  *See* Frank, 3 F.3d at 1362.  Common employment opportunity policies, without more, do not suggest the necessary level of control over CMSC's labor relations.  *See id.* at 1363.  The existence of the hotline and the fact Cargill, Inc.'s human resource department could provide assistance to CMSC on hiring and firing issues do not alter this conclusion.  The evidence produced by plaintiff is insufficient to create a justiciable controversy as to whether Cargill, Inc. was his employer.  Cargill, Inc. is therefore entitled to summary judgment on plaintiff's Title VII claim against it.

## 2.  *Oklahoma law*

The result is the same as to plaintiff's Burk tort claim against defendant Cargill, Inc.  A Burk claim for wrongful discharge requires an employment relationship.  *See* Vasek v. Bd. of County Comm'rs of Noble County, 186 P.3d 928, 932 (Okla. 2008) (stating a claim for wrongful discharge under Burk requires proof that an *employee* was discharged).  As discussed above, defendant Cargill, Inc. was not plaintiff's employer.  Oklahoma law recognizes that parent and subsidiary corporations are distinct legal entities.  A parent will only be liable for the actions of its subsidiary if there is proof the two are effectively one

5

entity, or the subsidiary is merely the instrumentality of the parent.  *See* Frazier v. Bryan

Mem'l Hosp. Auth., 775 P.2d 281, 288 (Okla. 1989); McCall v. Chesapeake Energy Corp.,

164 P.3d 1120, 1127 (Okla. Civ. App. 2007) (citations omitted).  The evidence must establish

more than the "usual parent-subsidiary relationship."  *See* McCall, 164 P.3d at 1127

(citations omitted).  The key inquiry is whether the parent exercised excessive control over

the subsidiary.  *See* Frazier, 775 P.2d at 288.  For substantially the same reasons as stated

with respect to the federal claim, plaintiff has not presented evidence sufficient to create a

justiciable issue as to Cargill, Inc.'s liability under Oklahoma law.

**B. Claims Against Osborne**

The petition does not clearly identify which of plaintiff's claims apply to defendant

Osborne.  As plaintiff concedes, there is ordinarily no liability under Title VII or the Burk

tort as to a supervisor as such.  Therefore, to the extent any claim of that sort is suggested by

the petition, summary judgment is appropriate in defendant's favor.

Plaintiffs's submissions indicate that his claim against defendant Osborne is for

tortious interference with plaintiff's employment relationship with CMSC.  The tort of

tortious interference with contractual or business relationships is premised on a third party

to a contract inducing a party to breach it, or the third party otherwise interfering with the

contractual relationship.  *See* Ray v. Am. Nat'l Bank & Trust Co., 894 P.2d 1056, 1060

(Okla. 1994).  Ordinarily, an agent or employee of a party cannot be liable for tortious

interference with a contract or business relationship of the party because, by reason of the

agency status, the agent/employee is not a third party to it.  Voiles v. Santa Fe Minerals, Inc.,

911 P.2d 1205, 1210 (Okla. 1996). However, in <u>Martin v. Johnson</u>, the Oklahoma Supreme Court recognized an exception to this rule when "an employee acts in bad faith and contrary to the interests of the employer . . ." 975 P.2d 889, 896 (Okla. 1998).

To satisfy the standard in <u>Martin</u>, the plaintiff must come forward with evidence that the defendant-employee acted in bad faith *and* contrary to the interests of his or her employer. *Id.* at 897. The standard requires more than proof of bad faith. A plaintiff must show that the agent or employee was acting to further his or her own interests. *Accord* <u>Taverna v. First Wave, Inc.</u>, 2010 WL 4930583, *14 (N.D. Okla. Nov. 30, 2010) (unpublished order) ("[P]laintiff must show that [defendants] were acting contrary to the interests of [their employer] and *in furtherance of their own personal interests*." (emphasis added)); <u>Murray v. St. Michael's College</u>, 667 A.2d 294, 300 (Vt. 1995)[2] ("[T]he tort is applicable in limited situations against other employees or officers of the plaintiff's employer, the key factor being whether the defendants were acting outside the scope of their employment *to further their own interests*." (emphasis added)).

While plaintiff has produced evidence of defendant Osborne's bad faith in the form of racial comments and the like, that, without more, does not make out the tort. Plaintiff has produced no evidence to suggest Osborne was acting in furtherance of his own interests or advancing some agenda or interest separate from that of his employer. Thus, he has not presented evidence sufficient to create a triable issue as to his tortious interference claim.

---

[2]<u>Murray</u> was among the cases identified by the Oklahoma Supreme Court as consistent with its holding in <u>Martin</u>. *See* 975 P.2d at 897, n.8.

Plaintiff argues that two Oklahoma court of appeals cases suggest a different result. *See* Fulton v. People Lease Corp., 241 P.3d 255, 262-63 (Okla. Civ. App. 2010); Eapen v. McMillan, 196 P.3d 995, 998 (Okla. Civ. App. 2008). The court is unpersuaded. First, while those cases addressed tortious interference claims against a supervisor, they were decided at the motion to dismiss stage. Under Oklahoma law, a motion to dismiss for failure to state a claim must be denied if relief is "possible under any set of facts" consistent with the petition. *See* Fulton, 241 P.3d at 260 (citing May v. Mid-Century Ins. Co., 151 P.3d 132, 136 (Okla. 2006)). Under that standard, it was not necessary for those courts to define the exact parameters of the Martin exception or to evaluate whether evidence existed to support it. Here, of course, the procedural posture is different.

Second, the expansive reading of Fulton and Eapen urged by plaintiff—essentially that a showing of bad faith on the part of the employee, by itself, is enough to make out the claim—is inconsistent with other provisions of Oklahoma law. As those cases acknowledge, Oklahoma's Burk tort does not contemplate liability for a non-employer supervisor. If Oklahoma has deliberately fashioned the tort most closely directed to employment discrimination to not involve supervisory liability, it would be an anomalous result to reach a contrary conclusion through expansive application of an exception to some more general common law tort. In any event, the court concludes Oklahoma would require, for supervisory liability, the dual showing referenced above—both bad faith on the part of the

supervisor and that he or she acted to further his or her own interests in some fashion.[3]  As plaintiff has not produced evidence sufficient to create a justiciable issue as to the second element, summary judgment for defendant Osborne is appropriate as to his tortious interference claim.

### III.  Conclusion

For the reasons stated, defendants' motion for summary judgment [Doc. #62] is **GRANTED**.  Judgment will be entered for defendants as to all currently pending claims at the conclusion of the case.  The court notes that, in his response brief, plaintiff requested he be allowed to add CMSC as a defendant if the court rejected his other claims.  That request was not properly raised by separate motion nor was it squarely raised in the summary judgment briefing, and it would be premature to grant leave now.  Therefore, if plaintiff chooses to pursue claims against CMSC, he may file a motion seeking leave to amend **within 14 days**.  Absent such motion, final judgment will be entered for defendants.

**IT IS SO ORDERED**.

Dated this 9th day of November, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[3]*Prospectively, it appears the* Burk *tort and other common law claims potentially available in the employment discrimination context have been abolished and replaced with an exclusive statutory cause of action.  See 25 Okla. Stat. Ann. §§ 1101, 1350(A) (West Supp. 2011 Electronic Update).*